THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID R. COATES, :
:
    Plaintiff, :
v. : 3:19-CV-1005
: (JUDGE MARIANI)
UNITED STATES POSTAL SERVICE, :
and NATIONAL ASSOCIATION OF :
LETTER CARRIERS :
:
    Defendants. :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On June 13, 2019, Plaintiff David Coates filed a complaint against Defendants United States Postal Service ("USPS") and National Association of Letter Carriers ("NALC") for relief "under the provisions of federal law pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185." (Doc. 1). Plaintiff thereafter filed a First Amended Complaint in September, 2019, alleging Breach of Contract against the USPS (Count I) and Breach of Duty of Fair Representation against NALC (Count II). (Doc. 18). Defendant USPS filed an Answer to the First Amended Complaint (Doc. 26) and Defendant NALC filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) requesting that the Court dismiss Count II of the First Amended Complaint (Doc. 21).

The issues set forth in NALC's motion to dismiss have been fully briefed and Defendant's Motion is ripe for disposition. For the reasons set forth below, the Court will grant Defendant's Motion to Dismiss.

## II. FACTUAL ALLEGATIONS

Plaintiff's First Amended Complaint (Doc. 18) alleges the following facts which, for the purposes of resolving Defendant's Motion to Dismiss, the Court takes as true:

Plaintiff, David R. Coates, is an adult individual and a citizen of the United States who resides in Mountaintop in Luzerne County. (Doc. 18, at ¶ 7). The USPS is an independent agency of the executive branch of the United States federal government, and NALC is a labor organization. Both defendants have principal places of business and headquarters located in Washington, DC. (*Id.* at ¶¶ 8, 9).

Coates was employed by USPS as a city carrier in the Dallas, Luzerne County area, from on or about February 12, 2000, until his removal, effective January 29, 2019. (Doc. 18, at ¶ 13).

During his employment with USPS, Plaintiff was subject to a collective bargaining agreement between Defendants USPS and NALC. (*Id.* at ¶ 14). Duly authorized officers or agents of NALC are engaged in representing or acting for employee members in the Middle District of Pennsylvania. (*Id.* at ¶ 10). Defendant NALC was Coates' exclusive bargaining agent for all matters pertaining to his employment, including his wages, terms and conditions of employment, tenure, and removal from employment. (*Id.* at ¶ 15).

By letter dated December 17, 2018, USPS, by and through its agent and employee, Melissa Berti, Postmaster, notified Coates that his employment was to be terminated, effective January 25, 2019. (Doc. 18, at ¶ 16). The letter set forth as the basis for Plaintiff's removal a number of failures to scan various managed service points ("MSPs") on his route.

2

(*Id*. at ¶ 17). However, Plaintiff alleges that MSP scanning failures are not customarily cause for removal and that USPS had no justification or cause for terminating his employment. (*Id*. at ¶¶ 18, 19).

On December 21, 2018, Coates requested that Peter Reilly, his NALC union officer who was affiliated with NALC Branch 115, grieve the proposed removal on Coates' behalf and seek an extension of time to accomplish the filing of the grievance because Coates had a previously scheduled vacation. (Doc. 18, at ¶ 20). Per the collective bargaining agreement, any grievance for which a filing extension had not been obtained, must be filed within fourteen days of the notice of the adverse action. (*Id*. at ¶ 24). Thus, the grievance filing deadline, if not extended, was December 31, 2018. (*Id*. at ¶ 26).

According to Plaintiff, NALC union officers, in particular at Branch 115, by custom and practice, are responsible for securing extensions of time for the filing of grievances on behalf of employees subject to the collective bargaining agreement and such extensions, when requested by NALC, are granted *pro forma*. (*Id*. at ¶¶ 21, 22).

Here, Reilly told Coates that he would seek and obtain the extension of time for the filing of the grievance. (*Id*. at ¶ 23).

After the initial contact on December 21, 2018, there were additional communications between Coates and Reilly on December 27, 2018, in which Coates reminded Reilly that he was not at the worksite because he was on vacation and reminded him of the need for an extension of time to file the grievance. (Doc. 18, at ¶ 27). On December 27, 2018, Reilly affirmed receipt of the communication from Coates, which

3

Coates understood as an assurance that Reilly would obtain the required extension of time. (*Id.* at ¶ 28). Nonetheless, neither Reilly nor any other NALC officer requested a grievance filing extension on behalf of Coates prior to the expiration of the December 31, 2018 filing deadline. (*Id.* at ¶ 29).

Plaintiff alleges that Reilly knew, or should have known on December 27, 2018, that he would not or could not request the grievance filing extension on behalf of Coates, and, therefore both Reilly and the NALC acted arbitrarily and in bad faith. (Doc. 18, at ¶ 30). In addition, had Coates known that Reilly did not intend or was not able to secure the grievance filing extension prior to the expiration of the December 31, 2018, he would have sought and obtained the assistance of another NALC representative to do so prior to the deadline. (*Id.* at ¶ 31).

Reilly's term of office as a NALC officer expired on December 31, 2018. (*Id.* at ¶ 25).

On January 3, 2019, Coates first became aware that the grievance filing extension had not been granted. (Doc. 18, at ¶ 35). Notwithstanding the expiration of the grievance filing period, Coates requested that his grievance still be filed by NALC. (*Id.* at ¶ 36). That same day, NALC filed with USPS the requested grievance of Plaintiff's removal. (*Id.* at ¶ 37). The grievance was resolved against Coates at Step B on January 29, 2019, due to its late filing. (*Id.* at ¶ 38).

Plaintiff alleges that prior to December 2018, Reilly had treated grievances sought on behalf of NALC members working in smaller, less busy, more rural locations, such as Dallas in Luzerne County, less aggressively and successfully than he did for members working in

4

larger, busier, and more urban locations, such as Wilkes-Barre. (Doc. 18, at ¶ 32). Accordingly, Plaintiff alleges that "[i]n this way, Mr. Reilly acted discriminatorily toward Plaintiff in his handling of Plaintiff's grievance and extension request." (*Id.* at ¶ 33).

Further, according to Plaintiff, by failing to seek an extension of time for the filing of the removal grievance, NALC breached its duty of fair representation owed to him. (*Id.* at ¶ 39). Rather, if the grievance been timely filed, Coates alleges that he would have prevailed in the grievance process or through arbitration and, at the step of discipline where Coates was, the next step would have been, at most, a last chance agreement and continuation of employment. (*Id.* at ¶¶ 41, 42).

> With respect to Defendant NALC, Plaintiff asserts that:
>
> By virtue of its role as Plaintiff's exclusive bargaining agent under the collective bargaining agreement between Defendants USPS and NALC, Defendant NALC had [a] duty to represent Plaintiff for the violation of his collective bargaining rights.
>
> Defendant NALC by its failure and refusal to timely seek and obtain [an] extension of time in which to file Plaintiff's grievance and to timely file Plaintiff's grievance, . . . violated its duty of fair representation to Plaintiff.
>
> As a consequence of the breach by Defendant NALC of its duty of fair representation to Plaintiff, Plaintiff has suffered and continues to suffer lost income, damage to his career, lost employment opportunities, and has suffered . . . great mental anguish, embarrassment and humiliation.

(Doc. 18, at ¶¶ 48, 49, 50).

Plaintiff has exhausted his remedies under the collective bargaining agreement. (*Id.* at ¶ 40).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

"Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-787 (quoting *Iqbal,* 556 U.S. at 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Defendant NALC's Motion to Dismiss asserts that Count II of Plaintiff's First Amended Complaint must be dismissed because it "does not contain allegations of conduct that was arbitrary, discriminatory, or in bad faith, as required to state a claim for breach of NALC's duty of fair representation." (Doc. 21).

Where a Union is the exclusive bargaining representative of the employees in a bargaining unit, it has a statutory duty to fairly represent those employees. This statutory duty "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). Thus, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190. "[M]ere negligence," even in the enforcement of a collective-bargaining agreement, does not state a claim for breach of the duty of fair representation. *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372-373, 376 (1990). *See also, Nicely v. USX*, 767 F.Supp. 728, 730 (W.D. Pa. 1991), *aff'd*, 968 F.2d 13 (3d Cir. 1992) (explaining that "[c]laims that the union may have acted negligently or exercised poor judgment are insufficient to support a claim of unfair representation.") (citing *Bazarte v. United Transp. Union,* 429 F.2d 868, 872 (3d Cir. 1970)); *Robbins v. United Parcel Serv., Inc.*, 2009 WL 793032 (M.D. Pa. 2009) ("mere ineptitude or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct necessary to prove breach of fair representation.") (quoting *Riley v. Letter Carrier Local no. 380,* 668 F.2d 224, 228 (3d Cir. 1981) (internal quotation marks omitted)).

In addition, a complaint setting forth "[a] mere allegation that a grievance 'should have been' processed through a grievance procedure does not satisfy" the requirements set forth by the Supreme Court in *Vaca. Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 961 (3d

Cir. 1980). *See also, Justison v. Nat'l Postal Mail Handlers, Watchmen, Messengers & Grp. Leaders, Local 308, Div. of Laborers' Int'l Union,* 815 F.Supp. 137, 140 (D.Del. 1993) (holding plaintiff failed to state claim for breach of the duty of fair representation where he alleged "the failure to process plaintiff's grievance properly" and "the false representations masking that failure," stating that the allegations in the complaint regarding the failure to process a grievance amounted to mere negligence).

Here, Plaintiff Coates has failed to set forth sufficient factual allegations to support a claim of a breach of the duty of fair representation by NALC; specifically, the First Amended Complaint does not contain factual allegations of conduct by the union that was "arbitrary, discriminatory, or in bad faith", *Vaca,* 386 U.S. at 190.

"[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338 (1953)). *See also, Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 46 (1998) ("A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation.").

To establish that union conduct was discriminatory, "'a plaintiff must adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives.'" *Bakos v. Am. Airlines, Inc.,* 748 F.App'x 468, 472 (3d Cir. 2018) (quoting *Addington v. U.S. Airline Pilots Ass'n,* 791 F.3d 967, 984 (9th Cir. 2015)). "The standard for 'discriminatory' conduct has been analogized to the standard for a violation of Title VII of the

1964 Civil Rights Act, which contemplates discrimination based on race, color, religion, sex or national origin." *Wilson v. Am. Postal Workers Union*, 433 F.Supp.2d 444, 449 (D. Del. 2006) (citing *Farmer v. ARA Servs,* 660 F.2d 1096, 1104 (6th Cir.1981)). See also, *Jeffreys v. Commc'n Workers of Am., AFL-CIO*, 354 F.3d 270, 276 (4th Cir. 2003) ("The duty of fair representation prohibits only 'invidious' discrimination, such as discrimination based on constitutionally protected categories like race or gender, or discrimination that arises from animus or prejudice.") (citing *O'Neill,* 499 U.S. at 81; *Considine v. Newspaper Agency Corp.,* 43 F.3d 1349, 1359-60 (10th Cir. 1994)).

Finally, a bad-faith claim "'requires a showing of fraudulent, deceitful, or dishonest action.'" *Bakos,* 748 F.App'x at 472 (quoting *White v. White Rose Food,* 237 F.3d 174, 179 (2d Cir. 2001). Otherwise stated, to show bad faith, a plaintiff must allege facts demonstrating an "intent to mislead." See *Marquez,* 525 U.S. at 47.

Here, the well-pleaded facts of the Complaint are facially insufficient to show what specific conduct was engaged in by NALC, and Reilly as its agent, which consists of arbitrary, discriminatory, or bad faith conduct as the reason for the failure to timely seek the extension of time to file the grievance.

Plaintiff has failed to allege specific facts showing any form of discrimination or animus towards him based on his location at Dallas. Plaintiff asserts that Reilly's "treat[ment] of grievances sought on behalf of NALC members working in smaller, less busy, more rural locations such as Dallas in Luzerne County less aggressively and successfully, than [his treatment of grievances] for members working in larger, busier and

10

more urban locations, such as Wilkes-Barre" demonstrates discriminatory and irrational conduct (Doc. 18, at ¶ 32; *see also*, *id.* at ¶¶ 33, 34). This allegation is insufficient to adequately plead conduct which may be arbitrary and/or intentional, severe, and unrelated to legitimate union objectives. Plaintiff does not set forth any factual allegations to support a reasonable inference, even when the allegations against Reilly are taken as true, that Reilly's purported different treatment of grievances was due to any discriminatory or irrational motive or without a rational basis or explanation. In addition, as noted by NACL, Plaintiff "does not even allege that the outcomes of such grievances were less favorable to the grieving member than similar grievances processed on behalf of carriers stationed in Wilkes-Barre." (Doc. 28, at 10).

Further, Plaintiff's allegation that Reilly "knew, or should have known on December 27, 2018, that he would not or could not request the grievance filing extension on behalf of Plaintiff, and accordingly Mr. Reilly and the NALC acted arbitrarily and in bad faith" (Doc. 18, at ¶ 30), does not show "more than a sheer possibility that a defendant has acted unlawfully," *Connelly*, 809 F.3d at 786, *i.e.* that NALC breached its duty of fair representation. Rather, Plaintiff's assertion that Reilly "knew, or should have known", consists of an allegation of negligence, which has been expressly found to be insufficient to state a claim for breach of the duty of fair representation. *See e.g. Rawson*, 495 U.S. 372-373, 376. Coates' allegation that this negligent conduct demonstrates that "the NALC acted arbitrarily and in bad faith" is therefore both conclusory and without legal or factual support. Plaintiff's allegations, as plead, do not adequately show any intent to mislead, or other conduct which may rise to the

11

level of fraudulent, deceitful, or dishonest action(s), but rather, at best, set forth facts which may support an assertion that Reilly was negligent in failing to file the grievance filing extension.

Nor does Plaintiff's allegation that he communicated with Reilly on December 27, 2018, and reminded him that he needed to file an extension of time to file the grievance, to which Reilly "affirmed receipt" (Doc. 18, at ¶¶ 27-28), serve to save Plaintiff's claim. Coates asserts that he "understood" Reilly's confirmation of receipt of Plaintiff's email as "an assurance that Mr. Reilly would accomplish the required extension." (Doc. 18, at ¶ 28). Plaintiff does not set forth any factual allegations regarding the manner in which Reilly "affirmed receipt", what was stated by Reilly, or why Plaintiff believed that Reilly's response constituted an "assurance" that the extension would be filed other than the mere fact that Reilly did respond in some unplead fashion.

Finally, Plaintiff's belief that "[h]ad the grievance been timely filed, Plaintiff would have prevailed in the grievance process or through arbitration" and that "[a]t the step of discipline where Plaintiff was, the next step would have been, at most, a last chance agreement and continuation of employment" (Doc. 18, at ¶¶ 41, 42), present nothing more than conclusory assertions. However, even when taken as true, these allegations do not advance Plaintiff's claim where the possible merit of a grievance, by itself, is not sufficient to establish a breach of the duty of fair representation. *See Vaca*, 386 U.S. at 195 (a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious. . .").

## V. CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will grant Defendant's Motion to Dismiss (Doc. 21) and dismiss Count II of the Amended Complaint without prejudice to Plaintiff amending the complaint to correct the deficiencies identified by the Court in this Opinion. A separate Order follows.

Robert D. Mariani
United States District Court Judge